UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNION STANDARD INSURANCE COMPANY,
A foreign corporation,

                              Plaintiff,

v.                                                             No. CV-03-727 JCH/RHS

HOBBS RENTAL CORPORATION,

                              Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**THIS MATTER** comes before the Court on a one-day bench trial, which took place on May 21, 2007. At trial, Plaintiff Union Standard Insurance Company ("Union Standard") was represented by Scott P. Hatcher, Esq., and Defendant Hobbs Rental Corporation ("Hobbs Rental") was represented by Gregory L. Biehler, Esq. After trial, the parties submitted supplemental proposed findings of fact and conclusions of law. The Court, having considered the parties' submissions, as well as the evidence presented at trial and the relevant law, makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Union Standard is a foreign insurance company authorized to write and sell insurance in the State of New Mexico.

2. Hobbs Rental is an oil field service company that does business in Hobbs, New Mexico. As part of Hobbs Rental's operations, it leases oil field equipment to oil producers.

3. Nolan Brunson, Inc. ("Brunson"), which also operates out of Hobbs, New Mexico, is in the business of transporting oil field equipment through the use of

trucks. Eighty to ninety percent of the work of Nolan Brunson is transporting equipment from one oil field location to another oil field location.

4. Union Standard issued a commercial lines policy to Hobbs Rental (policy number TP 1788417-21), which provided for business auto coverage, effective from June 30, 1999, through June 30, 2000 ("Policy").

5. The Policy was issued through Leavell Insurance Agency, an independent insurance agent.

6. On January 25, 2002, Wayne Widman, *et al.*, filed a lawsuit against, *inter alia,* Hobbs Rental in the First Judicial District, County of Santa Fe, No. D-101-CV-2002-0177 ("Underlying Action").

7. The first amended complaint in the Underlying Action alleged that Mr. Widman sustained injuries for which Hobbs Rental, among others, was liable.

8. The injuries arose out of a May 13, 2000, accident involving a Nolan Brunson truck, which occurred in Hobbs Rental's industrial yard.

9. Hobbs Rental had engaged Nolan Brunson to transport a mud separator leased to a third party by Hobbs Rental from the Hobbs Rental yard to an oil field location and pick up another mud separator from the field to return to the Hobbs Rental industrial yard.

10. Mr. Widman, an employee of Nolan Brunson, was injured when the Brunson truck was backing up, with the Hobbs Rental mud separator attached to the truck's gin pole, toward a concrete pad upon which the crew intended to rest the mud separator.

11. The Union Standard Policy provides, "We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' . . . to which this insurance applies caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'"

12. The Policy defines "auto" as "a land motor vehicle, trailer, or semi trailer designed for travel on the public roads but does not include "mobile equipment." "Mobile equipment" is defined as "vehicles . . . whether self propelled or not, maintained primarily to provide mobility to permanently mounted: (A) Power cranes, shovels or loaders."

13. The Brunson vehicle involved in the accident ("Brunson Truck") was a vehicle registered as a 1998 International truck authorized to travel the roads of New Mexico as a motor vehicle.

14. The Brunson Truck was used primarily to transport heavy oil field equipment and a crew of three from one oil field location to another over the roads of New Mexico.

15. The Brunson business uses trucks such as the Brunson Truck to travel anywhere from one to 200 miles to pick up and drop off equipment, including mud separators.

16. To accomplish the primary purpose of transporting the heavy equipment on the truck from point A to point B, the Brunson Truck was equipped with a gin pole and winch.

17. The gin pole affixed to the Brunson Truck was not originally attached to the Brunson Truck, but rather was attached after its original purchase. The gin pole can be and is removed for maintenance and repair.

18. The Brunson Truck is not similar to a crane.

19. The Brunson Truck was not used primarily as a power crane or for moving a power crane.

20. Mr. Brunson, whose company owns the truck in question, described the Brunson Truck as a "transportation truck," and explained that "loading and unloading [was] one of the components."

21. The loading and unloading of the Brunson Truck was incidental to the truck's main purpose of transporting oil field equipment.

22. Policies of insurance sold to oil field businesses in the Permian basin listed vehicles such as gin pole trucks as scheduled autos.

23. Carroll Leavell, the insurance agent for Nolan Brunson and Hobbs Rental, having been an insurance agent in the Hobbs area for over twenty years, would not advise any of his oil field business clients that a truck such as a gin pole truck would not be covered.

24. In the past 30 years, no insurance company, including Union Standard and St. Paul, has advised Mr. Leavell that its policies would exclude vehicles such as gin pole trucks. In the past 30 years, no insurance company has informed Mr. Levall that it would decline a claim on a gin pole truck on the ground that the truck was "mobile equipment."

25. The Brunson Truck was a scheduled auto under the policy of insurance issued by St. Paul Guardian Insurance Company to Nolan Brunson. The gin pole trucks of Brunson have always been insured as scheduled autos under the auto policies issued to Nolan Brunson.

26. The Union Standard policy insured Hobbs Rental for scheduled autos, including various trucks that Hobbs Rental used for lifting and loading equipment and crew. Johnny Cope, Vice President of Hobbs Rental, was never informed that these trucks would be classified as mobile equipment, and therefore not insured, if they were used for lifting and loading.

27. Mr. Cope expected that the Union Standard Policy would cover vehicles such as gin pole trucks.

28. On October 12, 2006, the Court issued an Amended Memorandum Opinion and Order [Doc. No. 231] granting in part Hobbs Rental's Motion for Summary Judgment, filed December 29, 2005 [Doc. No. 173], and denying Union Standard's Motion for Summary Judgment, filed January 13, 2006 [Doc. No. 181].

29. On October 19, 2006, the Court conducted a status conference, which was set at Union Standard's request. Union Standard's counsel Scott Hatcher requested the conference to discuss the necessity of trial after the Court's summary judgment rulings. Mr. Hatcher, counsel for Union Standard for the issues between Union Standard and Hobbs Rental, represented to the Court and opposing counsel that, after the Court's rulings, the issues in the case between Union Standard and Hobbs Rental were "relatively narrow." Mr. Hatcher explained that Union

Standard had had "basically two arguments . . . going into this case": (1) whether "the Nolan Brunson vehicle was . . . not a covered auto," *i.e.*, a non-owned auto or a hired auto, and (2) "whether . . . th[e] mobile equipment exclusion applies." Mr. Hatcher conceded that the Court's summary judgment rulings determined as a matter of law that the Nolan Brunson vehicle was a non-owned auto, and that this determination "moot[ed] out the issue whether [the vehicle was] a hired auto so that there . . . really [was] no reason to go forward with trial on th[e] issue [of covered auto]." Mr. Hatcher concluded that "[t]he only outstanding issue . . . [was] whether or not th[e] mobile equipment exclusion applie[d]."

30. Mr. Hatcher then asked the Court to reconsider its ruling on summary judgment that a question of fact, although based upon scant evidence, existed with respect to the question whether the Nolan Brunson vehicle constituted mobile equipment. Mr. Hatcher claimed that the Court had issued sufficient findings of fact to decide this issue as a matter of law, and explained that Union Standard was "trying to . . . avoid a fairly expensive gear up and work on a trial that perhaps may not be necessary from [Union Standard's] perspective." Mr. Hatcher stated, "if, in fact, the Court has made findings of facts sufficient to determine as a matter of law that this piece of equipment is, in fact, not mobile equipment, to save a lot of expenditure of money and the Court's time, [Union Standard] would invite the Court to re-look at [its] decision." Mr. Hatcher explained that "if the Court [was] going to go ahead and rule that [the vehicle was not mobile equipment], [as] it [was] clear to [Union Standard] that that [was] the way [the Court] [was] leaning, that [Union Standard] would just prefer to have a final order to that effect as

6

opposed to going through the academic exercise of a trial." Mr. Hatcher reiterated that from Union Standard's perspective, a trial would be a "useless exercise."

31. At the status conference, Steve Simone, counsel for Union Standard on the claims between Union Standard and former co-defendant St. Paul Guardian Insurance Company, "concur[red] with everything Mr. Hatcher said," and indicated that "[i]t seem[ed] really an inefficient waste of the Court's time" to proceed to trial.

32. At the conclusion of the status conference, the Court indicated that it would re-examine its decision on the summary judgment motions to determine whether a trial was necessary. The Court further noted that if it concluded that a factual questioned remained with respect to the mobile equipment issue, it would be willing to consider a streamlined trial.

33. In an October 20, 2006, letter to counsel, the Court informed the parties that it had not reached sufficient factual findings to decide the issue of mobile equipment as a matter of law. The Court further noted that "[t]o facilitate and encourage the preservation of judicial and party resources," "the Court [would be] willing to consider various approaches, including a streamlined trial and stipulations by the parties as to evidence and/or testimony, to [preserve resources]."

34. In a November 9, 2006, letter, counsel for Hobbs Rental Gregory Biehler informed the Court that the parties had conferred and were recommending a process for proceeding to trial. Consistent with Mr. Hatcher's representations at the status conference, Mr. Biehler explained that because "the only remaining issue unresolved by the Court's rulings on the dispositive motions [wa]s the issue

of the mobile equipment exclusion," the parties were proposing to present testimony limited only to that issue. Prior to sending the Court this letter, Mr. Biehler obtained the approval of Mr. Hatcher and Mr. Simone with respect to the language in the letter. Neither Mr. Hatcher nor Mr. Simone objected to limiting the trial in this matter to the issue of mobile equipment.

35. Union Standard's position at the October 19, 2006, status conference and in its agreement with the November 9, 2006, letter, *i.e.*, that the only outstanding issue post-summary judgment was mobile equipment, and not the underlying liability of Hobbs Rental, is consistent with its representations in other pleadings and papers before the Court. In its Second Amended Complaint, Union Standard lists the following reasons the underlying litigation does not trigger its policy: (1) the underlying plaintiff did not "sustain bodily injury resulting from the ownership, maintenance or use of the covered auto, as those terms have been legally interpreted; (2) the vehicle owned by Nolan Brunson was not an "auto" as defined under the policy and was instead "mobile equipment"; (3) the policy contains exclusions that preclude coverage; and (4) the policy represents one for business auto coverage and not general liability coverage. Union Standard did not raise Hobbs Rental's liability in the underlying suit as a grounds for no coverage.

36. In the initial pre-trial report, Union Standard represented that the basis for its case "was and remains that its policy with Hobbs Rental was a general liability policy and did not apply to an 'accident' and resulting from the ownership, maintenance or use of a 'covered auto.' Union Standard also contended that certain exclusions applied, such as . . . movement of property by mechanical device and/or

8

operations." Union Standard did not set forth any contention related to Hobbs Rental's liability in the underlying case.

37. In the pre-trial order, Union Standard represented that "there are no material issues of fact, in accordance with the arguments made in its Motion for Summary Judgment." Union Standard's Motion for Summary Judgment does not present any argument with respect to, or indeed contain any reference to, the question whether Hobbs Rental was liable to the plaintiff in the underlying litigation.

38. Union Standard first indicated that it intended to raise at trial Hobbs Rental's liability to the underlying plaintiff twelve days prior to trial. Hobbs Rental, through its counsel, promptly objected to Union Standard's attempt to inject new issues, beyond the question of mobile equipment, at trial.

39. Hobbs Rental represented at trial that if it had believed the question of Hobbs Rental's underlying liability would be at issue at trial, counsel for Hobbs Rental "would [have] call[ed] the attorneys for Mr. Widman and have them explain to the Court how it is that they were going to establish the liability of Hobbs Rental Corporation and then the witnesses that they would have called before the underlying trial jury to determine the liability of Hobbs Rental Corporation."

40. At trial, Hobbs Rental objected to Union Standard presenting any evidence beyond the question of mobile equipment.

## **CONCLUSIONS OF LAW**

1. Union Standard waived its right to contest Hobbs Rental's liability to the plaintiff in the Underlying Lawsuit.

2. Allowing Union Standard to raise the issue of Hobbs Rental's liability to the underlying plaintiff twelve days prior to trial, after Union Standard already represented on multiple occasions to the Court and opposing counsel that the only issue left for trial was mobile equipment, would prejudice Hobbs Rental.

3. The Brunson truck was not "mobile equipment" and was therefore was a covered "auto" under the Union Standard Policy.

4. Hobbs Rental reasonably expected the Union Standard Policy to provide coverage to vehicles such as the Brunson Truck.

5. In light of the Court's prior rulings and the evidence presented at the trial of this matter, the Court finds in favor of Defendant Hobbs Rental and against Plaintiff Union Standard on Union Standard's declaratory judgment action.

6. Union Standard had a duty to defend Hobbs Rental in the Underlying Litigation.

7. Union Standard had a duty to indemnify Hobbs Rental in the Underlying Litigation.

8. All findings of fact and conclusions of law not contained herein are rejected.

Dated this 6th day of July 2007.

_____
JUDITH C. HERRERA
UNITED STATES DISTRICT JUDGE